OPINION
On July 2, 1971, appellant, Ronald Houdeshell, and appellee, Sheryl Houdeshell, were married. On September 14, 1998, appellee filed a complaint for divorce. A hearing before a magistrate commenced on October 21, 1999. By decision filed September 26, 2000, the magistrate recommended spousal support to appellee in the amount of $1,500 per month, and allocated the parties' property, including appellant's interest in a partnership known as Hillbilly Park, Marsh and Farm and personal property i.e., guns.
Both parties filed objections. By opinion filed January 30, 2001, the trial court approved and adopted the magistrate's decision save for a few modifications. Pertinent to this appeal, the trial court reduced the spousal support award to $1,333 per month and raised the value of the guns allocated to appellant from $7,000 to $8,067.00. The final judgment decree of divorce was filed on February 23, 2001.
Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I AN AWARD OF SPOUSAL SUPPORT IS NOT PROPERLY BASED ON THE WEIGHT OF THE EVIDENCE WHEN IT ASSUMES A PARTY TO BE DISABLED WITHOUT ADEQUATE EVIDENCE, MEDICAL OR OTHERWISE.
 II AN AWARD OF SPOUSAL SUPPORT IN THE AMOUNT OF $15,000.00 PER YEAR IS IMPROPER WHEN THE PARTY IS CAPABLE OF EMPLOYMENT.
 III IT IS ERROR TO ORDER A DISTRIBUTIVE SHARE IN VIOLATION OF A PARTNERSHIP AGREEMENT THAT SETS THE VALUE OF THE PARTNERSHIP SHARE.
 IV IT IS ERROR FOR THE COURT TO AVERAGE APPRAISALS WHEN ONE OF THE APPRAISALS HAS NO RATIONAL BASIS IN FACT.
 V TO ALLOCATE ITEMS OF PERSONAL PROPERTY THAT ARE NOT SHOWN TO BE IN EITHER PARTY'S POSSESSION OR CONTROL IS ERROR.
 I, II
These assignments of error challenge the trial court's determination of spousal support as being against the manifest weight of the evidence. Appellant claims the award is improper because appellee is capable of employment. We disagree.
A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279. A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. Myers v.Garson (1993), 66 Ohio St.3d 610.
In determining spousal support, courts in this state are guided by R.C. 3105.18(C)(1) and the Supreme Court of Ohio's decision in Kunkle v.Kunkle (1990), 51 Ohio St.3d 64, paragraph one of the syllabus:
 Except in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, where a payee spouse has the resources, ability and potential to be self-supporting, an award of sustenance alimony would provide for the termination of the award, within a reasonable time and upon a date certain, in order to place a definitive limit upon the parties' rights and responsibilities.
R.C. 3105.18 governs spousal support. Subsection (C)(1) states the following:
 (C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
(b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
(h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
Contrary to appellant's assertion that the trial court found appellee to be disabled, the findings of fact adopted by the trial court do not find appellee to be disabled. See, Magistrate's Decision, Findings of Fact Nos. 32-39, 42, 44-51. Finding of Fact No. 69 states the following:
 The Magistrate finds that the medical and psychological conditions from which the plaintiff suffers, taken as a whole, have an appreciable negative impact upon her ability to earn a living in the competitive job market and to hold the level of employment that would provide an income sufficient to maintain a standard of living approximating that which she enjoyed during her marriage to defendant Houdeshell. The Magistrate has carefully considered the testimony of defendant Houdeshell's expert witness as well as the exhibits admitted into evidence through this witness' testimony. In so doing, the Magistrate has not looked at this evidence in a vacuum, standing alone, but, has weighed it in conjunction with the overall relevant and competent evidence admitted into the record on this issue. Having done so, the Magistrate finds that he is not convinced from such evidence that the plaintiff is presently capable of actually earning the level of income, that is, a gross annual income of approximately $17,000.00, attributed to her by this witness. * * *
Further in the decision, the magistrate states the following at 29, subsection (c):
 This factor is of great significance. The overall health of defendant Houdeshell appears to be excellent and there was no evidence to the contrary. On the other hand, the plaintiff's physical and emotional conditions are tenuous, at best. These proceedings, the separation, and the defendant's `promises' to the plaintiff have taken a significant toll on her emotional and mental well-being. Additionally, her physical health has also suffered and one can only question her ability to ever be in a position to return to productive, full-time employment. The plaintiff is significant in light of her present problems. Assuming her health does improve, her age will become an obstacle for her to ever pursue any type of meaningful career. Her remaining years of potential and productive employment are limited.
Appellee's medical history is set forth in detail in the transcript. T. at 18-25. Further, appellee testified to an injury she received related to a domestic violence act by appellant (T. at 30-31); her work history (T. at 27-30); appellant's spousal support arrearage (T. at 33-34); and the fact that she was living on the generosity of others. T. at 73-74. After a review of the record which includes a detailed analysis of the evidence (Magistrate's Decision filed September 26, 2000), we find the evidence substantiates the trial court's conclusions on appellee's employment capabilities.
Appellant argues his witness, Rod Durgin, Ph.D, a vocational economics specialist, refuted the issue of appellee's employment capabilities. Dr. Durgin interviewed appellee "to assess her present capacity to perform work and earn money." T. at 288. He found appellee to be a semi-skilled worker, and opined her yearly earning capacity until age sixty-five to be $16,996.48. T. at 288, 294.
The trial court's decision was based upon the magistrate's finding that Dr. Durgin did not have appellee's entire medical history. See, Magistrate's Decision, Finding of Fact No. 69(d); T. at 300-301. In approving and adopting the magistrate's decision in part, the trial court concluded the overall evidence mitigated against appellee's ability to work to a level consistent with Dr. Durgin's opinion. See, Magistrate's Decision, Finding of Fact No. 69(e). We are not in a position to pass on the credibility of any witness at trial because that duty lies squarely within the scope of the trier of fact. State v. Jamison (1990),49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881. Because the evidence is contradictory regarding appellee's ability to work, it is clear the trial court chose to believe appellee, her witnesses and the medical history in arriving at the spousal support award. We find the detailed analysis given in the magistrate's decision to be supported by credible evidence in the record.
Assignments of Error I and II are denied.
 III, IV
In these assignments of error, appellant challenges the division of his partnership interest and the valuation formula of Hillbilly Park, Marsh and Farm.
Appellant classifies the trial court's order as a distributive share when in fact his partnership interest is a marital asset acquired during the marriage. T. at 212.
Appellant argues the only value that can be assigned to his share of the partnership is $25,000, the agreed amount "if he sells, withdraws or dies." Appellant's Brief at 7; T. at 212-213; Exhibit K. Appellant argues the value should be $25,000 because it is divisible only by that amount. Appellant also argues it was error to determine the value based upon the averaging of the two appraisals presented.
The trial court considered both of these arguments and concluded the "share value" was not reflective of the one-quarter asset share (263 acres of real property and a cash account of $3,740.87):
 In making the fair market value determination set forth in item number 30, above, the magistrate has considered the evidence presented by the two witnesses who had appraised the subject real property as well as his view of the property. The Magistrate finds that the plaintiff's appraiser presented opinion testimony that the real property has a value of $600,000.00 while the defendant's appraiser presented testimony that the property had a value of $175,000.00. With regard to the testimony of the defendant's witness, the Magistrate notes that while the plaintiff's objection to the admissibility of defendant's exhibit "P" was sustained (the real property appraisal report), the witness' testimony that she had arrived at the same appraisal value, $175,000.00, as that reflected by the report was received into evidence without objection. The Magistrate finds a fair market value reflecting an average of these two appraisal figures to be appropriate in light of the limited access to the property and the overall marshy and wetland condition of a substantial portion of this property. The Magistrate finds that it is appropriate to disregard from this calculation the `share value' of $25,000.00 assigned by the partners of defendant Hillbilly Park, Marsh and Farm to each partner's one-quarter share in the partnership. The evidence clearly establishes that this figure was arrived at arbitrarily by the partners and that it has been shown to have no particular relationship to the actual fair market value of the partnership's assets.
Magistrate's Decision, Finding of Fact No. 31.
The trial court did not order a distribution of the partnership, but assigned a value and ordered half of that value to be paid to appellee within one year:
 The defendant Houdeshell shall pay to the plaintiff the sum of $48,437.50 as and for her interest in his partnership interest in defendant Hillbilly Park, Marsh and Farm. Defendant Houdeshell shall pay said sum to the plaintiff within twelve (12) months of the date of the filing of the final decree of divorce.
 Until such time that the plaintiff is paid, her interest in the partnership to the extent of $48,437.50 shall be considered in the nature of a constructive trust that will be imposed against the defendant partnership until such time that the plaintiff is paid or the obligation is otherwise satisfied as hereinafter provided.
 The defendant partnership, its partners, agents and representatives, are enjoined from taking any action or doing anything which would impair or otherwise diminish the plaintiff's marital interest. In the event that defendant Houdeshell fails to pay the plaintiff within the twelve (12) month period provided above, then and in that event, the plaintiff shall be awarded said sum (i.e. $48,437.50) from the defendant Houdeshell's Holophane Thrift Savings Plan. * * *
Magistrate's Decision, Item J.
It is clear from the testimony of both appraisers that $25,000 was an undervalued number. Appellant's appraiser testified the value of the partnership property to be $175,000 and appellee's testified to $600,000. T. at 231, 246. Although averaging of appraisals is not favored, it is clear from the magistrate's decision the trial court had sufficient reasons to so average the values given the location of the property on marshland versus its location next to the Longenberger development. Further, appellant's appraiser did not actually do the work, her associate did. T. at 244.
Because of the trial court's explanation of the reasoning behind averaging the appraisals, we cannot find the trial court erred in so valuing the property.
Assignments of Error III and IV are denied.
 V
Appellant claims the trial court erred in allocating the values of two guns to him as personal property. We disagree.
In Finding of Fact No. 25, the magistrate found the fair market value of appellant's eleven firearms to be $7,000 (Exhibit 6), and included said amount in appellant's assets in the division of marital assets. See, Magistrate's Decision, Item P. In its opinion filed January 30, 2001, the trial court rejected Exhibit 6, and corrected the value of the guns as follows:
 The Court accepts Exhibits A through H for 8 guns at $1,917.00. These appraisals do not include the two guns from defendant's father. Additionally, the Court directs the values of the two stolen guns be assigned to the defendant and from his testimony (p 151) the Court assigns $1,150.00 and $5,000.00 for these two guns. Since they were stolen, the defendant should exercise reporting them as stolen to place them on the stolen gun report with the Licking County Sheriff's Office and should have pursued an insurance claim. Therefore the total value of the guns awarded to the defendant is $8,067.00.
Exhibit 6 was an exhibit submitted by appellee which had been prepared by appellant. T. at 56, 210-202. The guns on the list did not accurately reflect the number of guns owned by appellant. T. at 56. Also, the guns on the list totaled $6,675, not $7,000. We find no error in the trial court rejecting Exhibit 6. Instead, the trial court accepted appellant's exhibits, Exhibits A through H. Appellant testified these exhibits included all of his guns except for two which had been given to him by his father and two which had been stolen. T. at 151. Appellant testified the two stolen guns, a Special Sporting Browning and a Kreighoff, were stolen from his motor home. T. at 145. Appellant estimated their value to be $1,150 and $5,000, respectively. Appellant admitted the guns were actually worth more, but he had been given a special deal. T. at 151-152. Appellant reported the guns missing. T. at 147.
Upon review, we cannot find the trial court erred in allocating the values of the two stolen guns to appellant given the fact he reported them missing and would be entitled to the insurance proceeds.
Assignment of Error V is denied.
JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Licking County, Ohio is affirmed.
Hon. W. Scott Gwin, P.J. Hon. William B. Hoffman, J. Hon. Sheila G. Farmer, J. concur.